**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| SANDRA JONES, | : | Case No. 1:06-CV-047 |
| | : | Judge Weber |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THE HILLMAN GROUP, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT THE HILLMAN GROUP, INC.'S**
**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

1.   Sandra Jones ("Plaintiff" or "Ms. Jones") originally alleged that Hillman discriminated against her on the basis of race, age, and disability, and that Hillman violated Ohio's public policy by discriminating against Ms. Jones on the basis of age, race, and disability, and retaliated against her for filing a Workers' Compensation claim and for allegedly taking leave under the Family and Medical Leave Act when it terminated her effective January 20, 2005.

2.   On January 12, 2007, Ms. Jones filed a Stipulation and Notice of Dismissal With Prejudice dismissing her claims of state and federal race discrimination, state and federal disability discrimination, and FMLA interference, and limiting her claims of breach of public policy to those policies relating to Ohio's Workers' Compensation laws.

3.     Hillman is engaged primarily in the business of the wholesale distribution of nuts, bolts, screws, and similar hardware to retail operations such as hardware stores, home improvement centers, and building materials stores throughout the United States.

4.     Ms. Jones, an African-American female born in 1948, was first hired by Hillman on or about March 31, 1993, and during the vast majority of her tenure with Hillman, she was employed as a machine operator in the packaging department.

5.     Ms. Jones testified during her deposition that she believes that her termination "had something to do with age" and nothing else. (Jones Dep. at 78.)

6.     Ms. Jones testified that she never observed anything to indicate that Mr. Abney, her supervisor for the period of time relevant to her termination, treated her differently because of her age. (*Id.* at 73.)

7.     Ms. Jones testified that she never heard Mr. Abney or anyone else at Hillman say anything that would indicate that age, race, or disability was a reason for her termination. (*Id.* at 81.)

8.     Ms. Jones testified that the only statement referring to age, race, or disability that was made by anyone at Hillman during the entire course of her employment was a single isolated statement made by Mr. Abney, specifically, "out with the old, in with the new." (*Id.* at 82.)

9.     Ms. Jones testified that this statement was made by Mr. Abney on only one occasion during a department meeting, which was held shortly after Mr. Abney was hired in 2002, more than two years prior to her termination, and that other than this particular incident, she never heard Mr. Abney or anyone else make any other comments that she considered to be ageist.  (*Id.* 82, 83, 88, 173, 191.)

10.     Ms. Jones testified that Mr. Abney had been brought in to make her shift more productive, that she was aware that Hillman intended to place more emphasis on production standards in the packaging department, and that Hillman began to track production numbers more closely once Mr. Abney was on board. (*Id.* at 56-58.)

11.     Ms. Jones testified that Mr. Abney expected more of all packaging department employees and that prior to Mr. Abney's hiring, Hillman was an easier place to work. (*Id.* at 52, 58.)

12.     As of Mr. Abney's start date as a supervisor in Hillman's packaging department, September 3, 2002, eighteen (18) of the twenty-seven (27) employees he was assigned to supervise were age 40 or older, and the average age of those employees was 42.85.  (*See* Exhibit G attached to Defendants' Motion for Summary Judgment.)

13.     As of December 31, 2003, Mr. Abney was supervising a total of thirty (30) employees, twenty-one (21) of whom were age 40 or older, and the average age of those employees was 45.17.  (*See id.*)

14.     As of December 31, 2004, Mr. Abney was supervising thirty-one employees, eighteen (18) of whom were age 40 or older, and the average age of those employees was 41.19. (*See id.*)

15.     A total of eight (8) individuals were hired into Hillman's packaging department between November 22, 2004 and January 3, 2005, seven (7) of whom were female, and five (5) of whom were age 40 or over.  (*See* Exhibit H to Hillman's Motion for Summary Judgment, which was filed under seal.)

16.     Between January 5, 2004 and November 21, 2005, Hillman hired a total of seventy-five (75) employees, nineteen (19) of whom (or over 25%) were age 40 or older. (*See id.*)

17.     Ms. Jones testified that she did not receive any raises during the periods in which she was rated as "Needs Improvement," that pay raises were based upon performance, and that when she received a "Meets Requirements" rating in 2003, she received a retroactive pay raise.  (Jones Dep. at 131-32, 166-67, and Ex. 18.)

18.     Any Hillman employee who receives a "Needs Improvement" rating of 60-76 does not receive a normal merit raise, and any employee who receives a "Needs Improvement" rating below 60 is not entitled to any merit raise. (*See* Lottman Decl. at ¶¶ 7-8.)

19.     Sheila Phillips and Hattie Wiley, like Ms. Jones, were both terminated after long periods of well-documented poor performance.  (*See* Lottman Decl. at ¶ 17.) Ms. Phillips was terminated on April 29, 2004 at age 44, and Ms. Wiley was terminated on July 7, 2003 at age 64. (*Id.*)

20.     Pat Taite, at the age of 55, voluntarily resigned on October 30, 2003 and chose to pursue vocational rehabilitation after she became unable, in her physician's opinion, to fulfill the requirements of her job. (*Id.* at ¶ 18.)

21.     Between January 2002 and January 2006, Hillman terminated a total of 54 packaging department employees (including Ms. Phillips and Ms. Wiley) for various reasons, including, but not limited to, excessive absences and/or tardies, violation of company policy, poor performance or inability to perform the job, insubordination, failure to return from leave, and falsification. (*See* Exhibit J to Defendant's Motion for Summary

Judgment, filed under seal.) Of those 54 employees, 37 (68.5%) were under the age of 40, while only 17 (31.5%), were over the age of 40 at the time of their termination. (*See id.*) Nineteen of the terminated employees, or thirty-five percent (35.2%), were in their twenties. (*See id.*)

22.     No one was hired to take over Ms. Jones' duties, nor was any existing employee reassigned to take over all of Ms. Jones' duties.  (Lottman Decl. at ¶¶ 20-21.) In fact, the packaging department employees routinely fill in on any open machine(s) so that each machine is covered.   All packaging employees move around the department depending upon the needs of the company.  (*Id.* at ¶ 20.)

23.     With respect to her claim for breach of public policy/Workers' Compensation retaliation, Ms. Jones testified to having received the following work-related injuries:  a cut on her thigh in 2002, an injury to her left shoulder in 2003, and catching her finger in her machine in 2004.  She further testified that none of the aforementioned injuries resulted in time lost from work other than the initial trip to the doctor at the time of injury and one subsequent trip to the Workers' Compensation doctor for which she used a personal day. (Jones Dep. at 162-164.)

24.     Ms. Jones testified that she never observed anything that would indicate that Mr. Abney treated her any differently because she had filed a Workers' Compensation claim, and that she never observed anything that indicated that Mr. Abney or anyone else at Hillman retaliated against her in any way because she had file Workers' Compensation claims. (*Id.* at 74, 78.)

25.     Contrary to the allegations in her Complaint, Ms. Jones testified that she never heard anyone, or heard from anyone, that anybody at Hillman thought she would

have to have surgery or significant treatment for her shoulder injury. She also testified that she never told anyone that she thought she was going to need significant treatment or surgery for her shoulder. (*Id.* at 165.)

26.     Ms. Jones testified that she never asked the company to adapt any of her job responsibilities or requested any accommodation due to her shoulder injury, Hillman never demoted her or reduced her pay as a result of her shoulder injury, and her shoulder injury did not prevent her from performing her job capably enough such that she believed she deserved to be paid in full. (*Id.* at 75, 77.)

27.     Beginning on or about October 16, 2002, and continuing until the time of her termination on January 20, 2005, Ms. Jones was repeatedly counseled by Hillman, both verbally and in writing, about her poor performance, including, but not limited to attendance infractions, safety concerns, quality issues, and failure to meet production standards. (*Id.* at 115-43 and Exhibits 9-17, 19-21, and 23-29 thereto.) A brief summary of the written counseling and performance appraisals is set forth below:

| Date | Form | Concerns |
|------|------|----------|
| 10/16/02 | Employee Discussion Notice | Attendance – missed 60 hrs. to date |
| 2/4/03 | Annual Performance Appraisal | Needs Improvement (75) – attendance, quantity of work, safety, socializing |
| 2/4/03 | Employee Discussion Notice | Due to 2003 review, reviews to be conducted every 30 days for a period of 90 days; lack of improvement may result in written notice and/or termination |
| 3/13/03 | Interim Performance Appraisal | Needs Improvement (60) – attendance, quality of work, quantity of work, flexibility/initiative, team work/cooperation |
| 3/13/03 | Employee Counseling | No improvement in attendance, quality, production and initiative since last review; lack of improvement may result |

| | | |
|---|---|---|
| | Notice – First Written | in final notice and/or termination |
| 5/2/03 | Interim Performance Appraisal | Meets Requirements (85) – attendance, quality of work, quantity of work, team work/cooperation are in need of improvement |
| 5/22/03 | 90-Day Performance Appraisal | Needs Improvement (75) – attendance, punctuality |
| 5/22/03 | Employee Counseling Notice – FINAL WRITTEN NOTICE | No improvement over the last 30 days with attendance and punctuality – however, improvement noted in other areas; if improvement isn't seen and maintained, termination will result |
| 7/14/03 | 90-Day Performance Appraisal | Meets Requirements (90) – attendance remains in need of improvement |
| 10/2/03 | Employee Discussion Notice | Production averaged 77% of required daily minimum over past 8 weeks – immediate improvement to level of at least 90% of required daily minimum required over next 30 days to avoid further disciplinary action |
| 1/22/04 | 2003-2004 annual appraisal | Needs improvement (45) – attendance, quantity of work, flexibility /initiative, team work/ cooperation, safety |
| 1/22/04 | Review Process to Address Unsatisfactory Performance | Immediate and sustained improvement in overall performance is necessary – due to score below 60, performance to be reviewed quarterly – **any quarterly score below 77 will result in review to determine whether continued employment is appropriate** |
| 4/29/04 | 90-Day Performance Appraisal | Meets Requirements (77) – attendance and quality of work remain in need of improvement |
| 4/29/04 | Note re: performance | While company recognizes and appreciates improvement in performance over past 90 days, reminder that if overall score falls below "meets requirements" in any of next 3 quarters, employment will be terminated – company wishes Ms. Jones continued success |
| 8/12/04 | 6-Month Performance Appraisal | Meets Requirements (85) – attendance, quality of work, and safety remain in need of improvement |
| 10/26/04 | Employee Discussion Notice | As of 10/25/04, missed 61.89 hours of work – any additional missed time will result in additional disciplinary action |

28.     Mr. Abney met with Ms. Jones to discuss each of the counseling and performance appraisal forms, and Ms. Jones signed each of these documents, with the exception of the final annual performance appraisal, which was reviewed with her but which she was not asked to sign. (*Id.* at 29, 142-43.)

29.     Mr. Abney recommended Ms. Jones' termination, and the decision to terminate Ms. Jones was made by Glen Hamann, Hillman's Director of Human Resources, and Jim Lottman, Hillman's warehouse and packaging manager responsible for all operations at Hillman's Hamilton Avenue facility. (Hamann Decl. at ¶ 3; Lottman Decl. at ¶ 15.)

## PROPOSED CONCLUSIONS OF LAW

1.     Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett* 477 U.S. 317, 325, 91 L.Ed.2d 265, 106 S. Ct. 2548 (1986). To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue; he must produce evidence of "specific facts showing that there is a genuine issue for trial."  *Id.* at 324; *see also Cotter v. Ajilon Servs., Inc.,* 287 F.3d 593, 598 (6th Cir.

2002) (holding plaintiff must oppose summary judgment against his ADA claim with specific facts supporting his claim; conclusory allegations are not sufficient).

2. Absent direct evidence of discrimination, a plaintiff must make her case under the familiar burden-shifting standard set forth in *McDonald Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1972). Under this standard, the plaintiff bears the burden of establishing a *prima facie* case of discrimination. Once the plaintiff establishes the necessary *prima facie* case, the burden shifts to the defendant to produce evidence that the plaintiff was terminated, for a legitimate, nondiscriminatory reason. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). This burden is one of production, not of persuasion, and can involve no credibility assessment. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). If the defendant employer meets this burden of production, the plaintiff has the opportunity to prove, by a preponderance of the evidence, that the legitimate nondiscriminatory reasons offered were a pretext for discrimination. *Reeves,* 530 U.S. at 143.

3. Even if an employment discrimination plaintiff establishes a *prima facie* case, summary judgment may still be appropriate if the defendant meets its burden of production and the plaintiff cannot produce sufficient evidence to demonstrate that the employer's proffered reason was a pretext for discrimination. *Gee v. Liebert Corp.*, unreported opinion, 2003 U.S. App. LEXIS 2751 (6th Cir., Feb. 12, 2003) (copy attached to Defendant's Motion for Summary Judgment as Ex. D). A plaintiff may show that a defendant's reasons were pretextual only by showing either:

(1) that the proffered reasons had no basis in fact, (2)

9

that the proffered reasons did not actually motivate [the decision], or (3) that they were insufficient to motivate the [decision].

*Peters v. The Lincoln Electric Co.*, 285 F.3d 456, 471 (6th Cir. 2002). Furthermore, as the Sixth Circuit has noted:

> [A] reason cannot be proved to be a pretext for discrimination unless it is shown **both that the reason was false, and that discrimination was the real reason**.

*Samadi v. OBES,* 48 Fed. Appx. 573, 575, 2002 U.S. App. LEXIS 21503 (6th Cir. 2002) (copy attached to Defendant's Motion for Summary Judgment as Ex. E) (*quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (emphasis in original)).

4.     Both Ohio and federal courts have routinely held that stray comments, even ones which were in fact age-based and offensive, unlike the comment at issue in this case, are insufficient as a matter of law to support a claim for age discrimination.  *See Ricker v. John Deere Insurance Co.,* 133 Ohio App.3d 759, 768 (Franklin Cty., 1998) (holding that comment made by plaintiff's supervisor that "you cannot teach an old dog new tricks" was isolated and therefore insufficient to defeat summary judgment); *Cone v. Longmont Hospital Ass'n,* 14 F.3d 526, 531 (10th Cir. 1994) (holding that CEO's statements that the hospital "need[s] some new young blood" and that "long term employees have a diminishing return" were stray remarks and were insufficient to defeat the Hospital's motion for summary judgment); *see also Waggoner v. City of Garland*, 987 F.2d 1160, 1169 (5th Cir. 1993) (stray remark by a supervisor that the plaintiff was an "old fart" is insufficient to create an issue of material fact); *Bush v. Dictaphone Corp.,* 161 F.3d 363, 369 (6th Cir. 1998) (statements by nondecisionmakers or by decisionmakers unrelated to the

decisionmaking process cannot satisfy the plaintiff's burden); *Byrnes v. LCI Communication Holdings Co.*, 77 Ohio St. 3d 125, 130, 672 N.E.2d 145 (1996) (where the court found there was insufficient direct evidence of age-related hostility where the employer had made a number of comments over several years indicating a desire for younger employees in different positions and the only comment directed to the plaintiff was an inquiry by the CEO as to whether plaintiff was suffering from Alzheimer's disease; the court held that age-related comments which are "isolated, ambiguous, or abstract" cannot support a finding of age discrimination); and *Williams v. Time Warner Cable*, 1998 Ohio App. LEXIS 2793, *9 (Summit Cty., June 24, 1998) (copy attached to Defendant's Motion for Summary Judgment as Ex. F) (holding that "isolated and ambiguous comments do not support a finding of discrimination.")

5.      Statements allegedly showing an employer's bias are to be evaluated by considering four factors:

> 1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; 2) whether the statements were related to the decision-making process; 3) whether the statements were more than merely vague, ambiguous, or isolated remarks; and 4) whether they were made proximate in time to the act in question.

*Peters v. The Lincoln Electric Company*, 285 F.3d 456, 478 (6th Cir. 2002). None of these facts is individually dispositive of discrimination but should be evaluated as a whole, taking all the circumstances into account. (*Id*.)

6.      One discriminatory comment, even if made to the plaintiff, is not sufficient to support a claim for discrimination. *See, e.g., Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309 (6th Cir. 1989) *overruled on other grounds by Desert Palace, Inc. v. Costa,* 539

U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003); *Bolton v. Scrivner, Inc.*, 36 F.3d 939 (10th Cir. 1994).

6.      The same test applies to ADEA and Ohio age-discrimination claims. *See Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 357-58 (6th Cir. 1998).

7.      The Sixth Circuit analyzes ADEA age discrimination cases under the same framework as Title VII employment discrimination cases. *Grosjean v. First Energy Corporation,* 349 F.3d 332, 335 (6th Cir. 2003) (citing *Policastro v. Northwest Airlines, Inc.,* 297 F.3d 535, 538 (6th Cir. 2002)). In order to prove a prima facie case of age discrimination, the plaintiff must demonstrate that (1) she is a member of a protected group; (2) she was subject to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a significantly younger person. *See id.*

8.      If the plaintiff makes out a prima facie case, then the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* (*quoting Kline v. TVA,* 128 F.3d 337, 342 (6th Cir. 1997) (*quoting Tex. Dep't of Cmty Affairs v. Burdine,* 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). Once the defendant has met this burden, the burden then shifts back to the plaintiff to "produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Id.* (*quoting Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1083 (6th Cir. 1994)).

9.      "While the burden of production shifts throughout this test, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the plaintiff always remains with the plaintiff." *Campbell v. Internat'l Paper Company,* 138 Fed. Appx. 794, 796, 2005 U.S. App. LEXIS 14264, **6 (6th Cir. 2005) (copy attached to

Defendant's Motion for Summary Judgment as Ex. K) (*citing Texas Dept of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981)).

10.     Because Hillman has articulated a legitimate, nondiscriminatory reason for Ms. Jones' termination, Ms. Jones must "produce evidence that the decision-makers' explanations were false and that … age discrimination was the real reason for the elimination of [her] position." *Gragg v. Somerset Technical College*, 373 F.3d 763, 768 (6th Cir. 2004).

11.     Under Sixth Circuit law, "a 'person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.  A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.'" *Grosjean,* 349 F.3d at 335-36 (*quoting Barnes v. GenCorp Inc.,* 896 F.2d 1457, 1465 (6th Cir. 1990) opinion replaced by 56 Fair Empl. Prac. Cas. (BNA) 1203 (6th Cir. Ohio Feb. 22, 1990) *cert denied* 498 U.S. 878, 111 S. Ct. 211, 112 L. Ed. 2d 171, 1990 U.S. LEXIS 4798, 59 U.S.L.W. 3250, 54 Empl. Prac. Dec. (CCH) P40258, 56 Fair Empl. Prac. Cas. (BNA) 1299 (1990)).

12.     In *Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 241 (2002), the Ohio Supreme Court signaled a retreat in Ohio from the ever-expanding public policy tort exception to at-will employment.  The Court in *Wiles* held that Ohio does not recognize a public policy claim based on the federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*., since the remedies provided by the FMLA are sufficient to adequately protect the underlying state public policy.

13.     Ohio's Workers' Compensation statute does not provide for a separate public

13

policy wrongful termination claim, in light of the fact that an adequate statutory remedy is available under section 4123.90. *See Coon v. Technical Construction Specialties, Inc.,* 2005 Ohio 4080, 2005 Ohio App. LEXIS 3729 (Summit Cty., Aug. 10, 2005) (copy attached to Defendant's Motion for Summary Judgment as Ex. L); *see also Polzin v. The Mail Room,* 2006 Ohio 4418, 2006 Ohio App. LEXIS 4357 (Medina Cty. Aug. 28, 2006) (copy attached to Defendant's Motion for Summary Judgment as Ex. M).

> There is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests . . . [because] the public policy expressed in the statute would not be jeopardized by the absence of a common-law wrongful-discharge action in tort because an aggrieved employee has an alternate means of vindicating his or her statutory rights and thereby discouraging an employer from engaging in the unlawful conduct.

*Coon, supra,* at *P18 (*quoting Wiles,* 96 Ohio St.3d at *P15).

14.     "[T]he *Wiles* Court limited the [public policy] exception [to the employment at will doctrine] and explained that when deciding whether to allow a public policy claim for wrongful termination a court must review the adequacy of the remedies under the applicable statute ... [and] that a remedy is not inadequate merely because it does not allow for all avenues of recovery."  *Id.* at *P22.

15.     The remedies available under the FMLA and O.R.C. section 4123.90 are similar, and   the Workers' Compensation statute

> promotes the same goals as a separate public policy claim and provides an employee with 'a meaningful opportunity' to return to the same position he was in prior to the adverse action by the employer. Furthermore, limiting an aggrieved party to a statutory R.C. 4123.90 claim does not 'seriously' compromise' the statute's objectives of preventing employers from retaliating or discriminating against employees for filing workers'

14

compensation claims.

*Id.* at *P26 (*quoting Wiles v. Medina,* 96 Ohio St.3d at *P14, 17).

16.     Because Ohio's Workers' Compensation statute, O.R.C. section 4123.90, adequately protects the underlying public policy, *Wiles* controls and prohibits a claim for breach of public policy based upon a Workers' Compensation retaliation claim.

Respectfully submitted,

s/David L. Barth
David L. Barth (0025169)
Susan R. Bell (0069574)
CORS & BASSETT, LLC
537 East Pete Rose Way
Suite 400
Cincinnati, Ohio 45202
Telephone: 513.852.8228
Facsimile:  513.852.8222

srb@corsbassett.com
Trial Attorneys for Defendant
The Hillman Group, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Randolph H. Freking, Esq.
Megan E. Clark, Esq.
Freking & Betz
525 Vine Street, 6th Floor
Cincinnati, Ohio 45202
randy@frekingandbetz.com

s/David L. Barth
David L. Barth

295490.1