UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SANDRA JONES,

               Plaintiff

      v.                            C-1-06-47

HILLMAN GROUP,

               Defendant

## ORDER

This matter is before the Court pursuant to defendant's Motion for Summary Judgment and Memorandum in Support (doc. no. 19); plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (doc. no. 29); defendant's Reply in Support of Defendant's Motion for Summary Judgment (doc. no. 38); defendant's Proposed Findings of Fact and Conclusions of Law as highlighted by the plaintiff (doc. no. 32) and plaintiff's Proposed Findings of Fact and Conclusions of Law as highlighted by defendant (doc. no. 39).

Summary judgment is permitted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In reaching its judgment, the Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Id.* at 249; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson*, 477 U.S. at 250. A court must decide "whether the evidence presents a sufficient disagreement to require submission of the case to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. If a court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id; Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

A fact is "material" if the dispute over it might affect the outcome of the lawsuit under the governing law. *Anderson*, 477 U.S. at 248. In determining whether there are genuine issues of material fact, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in its favor. *id.* at 255.

In plaintiff's Complaint, she alleged that the defendant discriminated against her on the basis of race, age, and disability, and that the defendant violated Ohio's public policy by discriminating against Ms. Jones on the basis of age, race, and disability, and retaliated against her for filing a Workers' Compensation claim and for allegedly taking leave under the Family and Medical Leave Act when it terminated her effective January 20, 2005.

3

On January 12, 2007, plaintiff filed a Stipulation and Notice of Dismissal With Prejudice dismissing her claims of state and federal race discrimination, state and federal disability discrimination, FMLA interference, and limiting her claims of breach of public policy to those policies relating to Ohio's Workers' Compensation laws.  Thus, Counts III and IV, the federal and state age claims and Count VII limited to the claim of retaliation for the filing of a Workers' Compensation claim remain in this case.

The Court concludes the following material facts presented by the plaintiff are actually and in good faith disputed by the parties and could be resolved in favor of the plaintiff by a reasonable jury and the jury could return a verdict for the plaintiff on her remaining claims:

1.  Whether plaintiff was a good worker with broad experience in many different areas of the company?

2.  Whether defendant terminated plaintiff in 2005 and hired two significantly younger employees shortly thereafter?

3.  Whether Mr. Abney contributed to the decision to terminate plaintiff and had proclaimed in a staff meeting announcing changes in procedures, his beliefs about older employees when he announced that defendant's new programs represented an effort to be "out with old and in with the new?"

4.  Whether Mr. Abney described plaintiff as set in her ways during his supervision of plaintiff?

5.  Whether, particularly after her shoulder injury, Mr. Abney failed to follow through on promises, became angry when plaintiff asked him a question and singled plaintiff out to do the undesirable tasks, such as order pulling?

4

6.   Whether Mr. Abney treated June Washington, Eva Rivers and plaintiff the same?

7.   Whether plaintiff asked Mr. Abney for help to improve her performance?

8.   Whether plaintiff reported her problems with her machine to defendant because her supervisors were chastising her for lack of production?

9.   Whether defendant's conclusion that plaintiff needed improvement in the areas of flexibility, initiative and teamwork were pretextual and reflected classic age-based stereotypes.

10.  Whether plaintiff voiced her objection to the evaluations by Mr. Abney.

11.  Whether Anita Sams, born in 1956, operated plaintiff's machine and performed all of plaintiff's duties after defendant terminated plaintiff?

12.  What were the roles of Mr. Hamann, Mr. Lottman, Mr. Galvez and Mr. Abney in terminating plaintiff?

13.  Whether significantly younger employees had worse production and work records than plaintiff but were treated more favorably?

14.  Whether Mr. Abney's appraisals were accurate as to punctuality, attendance and quality of work?

15.  Whether immediately after plaintiff filed her workers' compensation claim in early 2003 for her shoulder injury, Mr. Abney began filing bad performance reports which were disputed by plaintiff?

16.  Whether defendant terminated plaintiff by subtracting four percent from plaintiff's production performance because she had been hurt on the job?

5

17.    Whether defendant refused to maintain plaintiff's work station machine in repair which gave defendant an excuse to terminate plaintiff's employment for lack of production?

18.    Whether plaintiff was given the opportunity to read her performance reports and to include in the performance reports her disagreement to the evaluations expressed during her meetings with Mr. Abney in which he discussed her performance?

The Court, therefore, concludes that this case must proceed to trial so that the genuine issues of material fact may be resolved as to Counts III, IV and Count VII, limited to the retaliatory discharge in contravention of the public policy of Ohio expressed in Ohio Rev. Code § 4123.90.

The public policy of the State of Ohio provides an exception to the doctrine of employment at will.  An employer cannot terminate an employee for a reason that violates the articulated public policy of the State of Ohio, *Painter v. Graley*, 70 Ohio St. 3d 377 (1994).   To establish a wrongful discharge in violation of public policy, plaintiff must show that 1) a clear public policy exists; 2) her dismissal would jeopardize that public policy; 3) her termination was motivated by conduct related to the public policy; and 4) defendant lacked an overriding legitimate business justification for the dismissal.  *Id.*

In moving for summary judgment on plaintiff's public policy claim, defendant relies on *Wiles v. Medina Auto Parts*, 96 Ohio St. 3d 240 (2002).  In *Wiles*, the Court considered whether a public policy claim can be based solely on the federal Family and Medical Leave Act ("FMLA").  *See id.* at 240.

6

The Court said "By not recognizing a *Greely* claim based solely on an FMLA violation, we are merely deciding that the statutory remedies in the FMLA adequately protect the public policy embedded in the Act, leaving no reason for us to expand the scope of remedies that Congress has provided. *See Collins*, 73 Ohio St.3d at 73, 652 N.E. 2d 653 (noting that courts sometimes confuse the adequacy–of–remedies analysis with preemption)." *id.* 249.

Plaintiff's public policy claim arose in Hamilton County, Ohio.  The First Appellate District of Ohio sits in Hamilton County, Ohio.  In *Boyd v. Winton Hills Med. & Health Ctr., Inc.*, 133 Ohio App.3d 150, 727 N.E. 2d 137, that Court held "We conclude that Ohio law allows common–law wrongful–discharge claims for violations of Ohio Rev. Code. § 4123.90." *id.* 145.

The Supreme Court of Ohio has established that the clarity and jeopardy elements [of a public policy claim are] questions of law to be decided by the court while factual issues relating to the causation and overriding justification elements were generally for the trier of fact to resolve. [citation omitted] *Wiles* at 242–243.

7

As set forth before, this Court has concluded that genuine issues of material fact have been presented by plaintiff on these factual issues.  Pursuant to *Boyd* and other cases decided in this district, this Court holds plaintiff has satisfied the clarity and jeopardy elements.

Accordingly, defendant's Motion for Summary Judgment (doc. no. 19) is **DENIED**.  This case shall proceed to trial as previously scheduled by the Court.

**IT IS SO ORDERED**

     s/Herman J. Weber     
Herman J. Weber, Senior Judge
United States District Court
